IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| GERALD ANDERSON, | } | |
| Plaintiff. | } | |
| | } | |
| v. | } | C.A. _____ |
| | } | |
| KROGER TEXAS L.P. and  , | } | JURY DEMANDED |
| KRGP INC. | } | |
| Defendants. | } | |

PLAINTIFF'S ORIGINAL COMPLAINT

Gerald Anderson, Plaintiff herein, brings this civil action complaining of Kroger Texas L.P. and KRGP Inc., Defendants, and for cause of action would show the following:

PARTIES

1.      Plaintiff is a resident of Fort Bend County, Texas.

2.      Kroger Texas L.P. ("Kroger Texas") is limited partnership formed under the laws of the state of Ohio.  Kroger Texas may be served with Summons and this Complaint through its registered agent for service, Corporation Service Company d/b/a SCS-Lawyers Incorporating Service Company, 211 E. 7th Street, Ste. 620, Austin, TX 78701-3218.

3.      KRGP, Inc. ("KRGP") is the general partner of Kroger Texas, is an Ohio Corporation with its principal place of business in Cincinnati, Ohio, and may be served with Summons and this Complaint through its registered agent for service, Corporation Service Company d/b/a SCS-Lawyers Incorporating Service Company, 211 E. 7th Street, Ste. 620, Austin, TX  78701-3218.

JURISDICTION

4.      This court has jurisdiction over this civil action pursuant to 28 U.S.C. §1332(a), diversity of citizenship. Plaintiff is a citizen of Texas.  Kroger Texas L.P. is a limited partnership, and is a citizen of Ohio, in that all of its partners are citizens of Ohio. It general partner, KRGP, is an Ohio Corporation, with its principal place of business in Ohio, and as such is a citizen of Ohio for diversity purposes.  Its limited partner, KRLP Inc., is also a citizen of Ohio, as it is an Ohio Corporation with its principal place of business in Ohio.  As such, there is complete diversity of citizenship.  The amount in controversy exceeds $75,000.00, exclusive of interest and costs.

VENUE

5.      Venue of this civil action is proper in the Southern District of Texas pursuant to 28 U.S.C. §1391(b)(2), in  that a substantial part of the events or omissions giving rise to Plaintiff's claims occurred.

OPERATIVE FACTS

6.      Plaintiff is the sole member and manager of The Sauce Factory, LLC, a Texas limited liability company ("The Sauce Factory").

7.      Plaintiff's business is centered on a specialty line of barbecue sauces and seasonings.

8.      The Sauce Factory initially made a name for itself through direct sales at local farmer's markets.  In mid-July of 2014, Plaintiff contacted the DSD Sales Promoter for Kroger Texas, Mr. Mark Rayner, seeking to introduce The Sauce Factory's product line to Kroger Texas.  After an exchange of emails, an initial face-to-face meeting was held on August 19, 2014.

9.     In June of 2015, Mr. Rayner called Plaintiff, inviting him to participate in one of Kroger Texas's vendor retail food shows.  He also advised Plaintiff that he would be sending him a template of an introduction letter to be used by Plaintiff at the Kroger Texas food show.  He explained that this introduction letter was to be handed out to the retail store managers, and that he should use it later when visiting Kroger Texas stores to help with getting access to the decision makers at each Kroger Texas grocery store location.   Plaintiff prepared the introduction letter, which Mr. Rayner approved and signed.  Mr. Rayner called it The Sauce Factory's "license to hunt."

10.     On July 28, 2015, Plaintiff and The Sauce Factory participated in the Kroger Texas food show.  Mr. Rayner was on hand, along with Mr. Tom Niedzwicki, one of Mr. Rayner's superiors at Kroger Texas.  During their discussions, Mr. Rayner advised Plaintiff to offer the retail store managers a free in-store sampling demo, provided that they would be willing to purchase a minimum of 10 cases of sauce.   Plaintiff considered this an excellent idea, and began making plans to do so.

11.     Plaintiff, at his own expense, set up displays in several Kroger stores in the Houston area.  By September of 2015, sales of the barbecue sauce were going so well that Kroger Texas, through Mr. Rayner, instructed Jake's Finer Foods to begin reordering the sauce for the distribution warehouse.  One of the conditions of doing business with Kroger Texas was that all sales of The Sauce Factory Product to Kroger Texas had to be through its distributor, Jake's Finer Foods.

12.     In January of 2016, Mr. Rayner invited Plaintiff to Kroger Texas's February food shows in both Houston and Dallas.  Plaintiff participated in both shows, signing up a number of Kroger Texas stores in the Houston area, and another 15 in the

Dallas area.  Again, following the suggestion previously made by Mr. Rayner, Plaintiff

had The Sauce Factory open and staff store displays in several Kroger stores in the

Houston and Dallas – Fort Worth area, all at The Sauce Factory's expense.

      13.     On March 24, 2016, Plaintiff received from Mr. Jim Nordhaus, a manager

of Jake's Finer Foods a copy of an email, which had been sent to Jake's Finer Foods from

a Kroger Texas employee named Pam Young.  This email was addressed to a Leslie

Longoria, who worked at Jake's Finer Foods, and cc'd to Mr. Nordhaus and another

officer at Jake's Finer Foods, Mark Schwartz.  The contents of the email are quoted

below:

> "From:       Young, Pam
> Sent:       Thursday, March 24, 2016 10:06 AM
> To:         Leslie Longoria
> Cc:         Mark Schwartz; Jim Nordhaus; Schrock, Courtney; Rayner, Mark;
>                Niedzwicki, Tom.
> Subject:   RE:  The Sauce Factory Items
>
> Do not accept any additional orders from this company
>
> It appears that the authorization letter from Mark may have been edited to imply
> that ordering these items was mandatory
>
> All of the items below have been unauthorized for all stores until further notice.
>
> Thanks for taking care of our customers!
>
> Pam Young/Grocery Merchandizing Execution
>
> Kroger Texas L.P. – Southwest Division

      14.     The March 24, 2016 email discussed above was sent by a Kroger Texas

employee during the course and scope of that Kroger Texas employee's employment.

Additionally, as admitted in an email sent by the above-mentioned Tom Niedzwicki, the

email was sent at his direction.  On information and belief, Mr. Niedzwicki was, at that time, a member of senior management of Kroger Texas Houston.

15.      In addition to Ms. Longoria, the email was sent to Mr. Rayner, Mark Schwartz of Jake's Finer Foods, and someone named Courtney Schrock, believed to be an employee of Kroger Texas.

16.      Any reasonable person reading the March 24, 2016 email would understand that it referred to Plaintiff and The Sauce Factory.

17.      The gist of the email was that Plaintiff had used a forged or altered document to falsely claim that Kroger Texas store managers were required to purchase product from The Sauce Factory.  The allegedly altered document was identified as the authorization letter from Mr. Rayner.  That accusation was false.  At no time did Plaintiff, or anyone acting on his behalf, alter the authorization letter from Mr. Rayner.

18.      On April 8, 2016, Mr. Niedzwicki sent another email in which he acknowledged that the accusations made in the March 24, 2016 email were not true.  No apology was offered.

19.      On information and belief, the contents of the email, or the email itself, was then disclosed to the president of Consolidated Mills, located here in Houston. Consolidated Mills was and remains the processor and bottler of The Sauce Factory's product.  Up until the time of this email, Consolidated Mills had observed net 10 days payment terms on all The Sauce Factory product that was processed by Consolidated Mills.  However, after this email was sent, Consolidated Mills informed Plaintiff that from that point in time forward The Sauce Factory would have to pay cash on delivery

for each order. There was no change in The Sauce Factory's business or finances at that time, and its payment history with Consolidated Mills was impeccable.

20.     Prior to Mr. Niedzwicki directing Ms. Young to send the March 24, 2016 email, no one from Kroger Texas contacted Plaintiff in an effort to investigate the accuracy of the accusations contained therein, before or after the defamatory statement was published.

CAUSES OF ACTION

**Libel pursuant to Chapter 73, Tex. Civ. Prac. Rem. Code.**

21.     Plaintiff incorporates the allegations set forth in paragraphs 1 through 20.

22.     The person against whom the accusations made in the March 24, 2016 email discussed above was Plaintiff.

23.     The March 24, 2016 accused Plaintiff of engaging in fraudulent business practices, namely, the alteration of the authorization letter that the Plaintiff had received from Mr. Rayner.

24.     The allegations set forth in the March 24, 2016 email were false.

25.     The allegations set forth in the March 24, 2016 email accused Plaintiff of malfeasance in the manner in which he conducted business.

26.     The allegations set forth in the March 24, 2016 email constituted statutory libel, pursuant to §73.001, Tex. Civ. Prac. Rem. Code, in that the false statements contained therein tended to impeach Plaintiff's honesty, integrity, virtue, and reputation.

27.     A demand for retraction was sent to The Kroger Co., believed to be the controlling entity over Kroger Texas, more than 30 days prior to the commencement of

this civil action, pursuant to the Defamation Mitigation Act, §73.055, Tex. Civ. Prac. Rem. Code.

**Libel Per Se.**

28.     Plaintiff incorporates the allegations set forth in paragraphs 1 through 27.

29.     The subject of the March 24, 2016 email discussed above was Plaintiff.

30.     The March 24, 2016 email accused Plaintiff of engaging in fraudulent business practices, namely, the alteration of the authorization letter that the Plaintiff had received from the Sales Promoter.

31.     The March 24, 2016 email accused Plaintiff of criminal behavior, namely theft by fraud or forgery.

32.     The allegations set forth in the March 24, 2016 email were false.

33.     The allegations set forth in the March 24, 2016 email accused Plaintiff of malfeasance in the manner in which he conducted business.

34.     The false allegations set forth in the March 24, 2016 email were published with malice.

35.     Alternatively, the false allegations set forth in the March 24, 2016 email were published due to the negligence of Kroger Texas and its employees, through their reckless failure to investigate the accuracy of the defamatory statements made.

DAMAGES

36.     Plaintiff incorporates the allegations set forth in paragraphs 1 through 35.

37.     The defamatory statements made by Kroger Texas constituted libel per se, as the defamatory statements injured Plaintiff in his profession and occupation.

38.    The defamatory statements made by Kroger Texas constituted libel per se, as the defamatory statements accused Plaintiff of having committed an act that would constitute a crime.

39.    In cases of libel per se, damages are presumed.

40.    Plaintiff has sustained, and in reasonable probability will continue to suffer,  actual damages as a direct and proximate result of the libelous allegations, in a sum in excess of $75,000.00.

**Exemplary Damages.**

41.    Plaintiff incorporates the allegations set forth in paragraphs 1 through 40.

42.    The damages that Plaintiff suffered and will continue to suffer were the result of malice on the part of Kroger Texas.  In this regard Plaintiff would show that Kroger Texas, in sending the defamatory email of March 24, 2016, had a specific intent to harm Plaintiff.

43.    Alternatively, the damages that Plaintiff suffered and will continue to suffer were the result of gross negligence on the part of Kroger Texas.  In this regard, Kroger Texas objectively knew or should of known of the extreme risk of harm to Plaintiff through the sending of the defamatory email, and had actual, subjective awareness of the risk of harm to Plaintiff yet proceeded to send the libelous email with conscious indifference to the rights, safety or welfare of the Plaintiff.

44.    In order to punish the wrongdoer, and to deter others from engaging in the same or similar activity, Plaintiff seeks an award of exemplary or punitive damages against Kroger Texas as provided for in Chapter 41, Tex. Civ. Prac. Rem. Code.

## LIABILITY OF KRGP INC.

45. Plaintiff incorporates the allegations set forth in paragraphs 1 through 44 above.

46. As the general partner of Kroger Texas LP, KRGP is liable for the actions of Kroger Texas LP.

## RESPONDEAT SUPERIOR

47. Plaintiff incorporates the allegations set forth in paragraphs 1 through 46 above.

48. The wrongful actions described above were undertaken by employees or representatives of Kroger Texas. As such, Kroger Texas and KRGP are liable for any damages caused by such wrongful acts under the doctrine of Respondeat Superior.

## DEMAND FOR TRIAL BY JURY

49. Plaintiff demands trial by jury on all questions of fact.

## PRAYER FOR RELIEF

50. Plaintiff prays for the following relief:

a. Actual damages in a sum in excess of $75,000.00 exclusive of costs and interest;

b. Punitive or exemplary damages.

c. Pre-judgment and post judgment interest at the legal rate.

d. Costs of court; and

e. All other and further relief, at law and in equity, to which Plaintiff may be justly entitled.

Respectfully submitted,


**/s/ Daniel Kistler**
SBOT # 11540300
Fed. ID. #30

Of Counsel:

Daniel Kistler, Attorney at Law
Mailing Address:
2617C West Holcombe, No. 421
Houston, Texas  77025
Office Address:
17041 El Camino Real, Ste. 204
Houston, Texas 77025
Telephone:  (713) 855-0827
Facsimile:   (866) 352-5124
kistlerattorney@comcast.net

ATTORNEY FOR PLAINTIFF